### KIMBROUGH, administrator, v. HARWELL.

PER CURIAM. This being an action for specific performance, in which a definite and specific contract is set up and sought to be enforced, and the proof submitted not clearly and satisfactorily establishing the contract alleged and sought to be enforced, and only tending to establish another and different contract, and there being no clear and satisfactory proof of any services rendered by the plaintiff to the intestate, the verdict of the jury finding in favor of the plaintiff and setting up the contract is contrary to law and evidence; and for this reason a new trial is granted.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Gilbert, J., dissenting.*

No. 4043. MAY 6, 1924.

Specific performance. Before Judge Park. Greene superior court. October 29, 1923.

R. F. Harwell filed a petition alleging that in February, 1921, he and Mrs. Henrietta K. Harwell entered into a contract whereby he undertook and agreed to .support, maintain, and care for her during the rest of her life, in consideration of which she promised and contracted that she would "transfer, assign, and set over to petitioner, either by deed or conveyance to take effect at her death or by will, all of her property real and personal;" that she died suddenly on March 24, 1921, without having carried out her part of the contract by the execution of a deed or will transferring or conveying her property to him; that he did support, maintain, and care for her in his home; that E. A. Kimbrough is the administrator of her estate; that more than twelve months have elapsed since his qualification; and that he refuses to recognize and carry out said agreement, and refuses to deliver the property

or any part of it to petitioner. The prayers were: (1) for specific performance of the contract; (2) that the administrator be restrained by injunction from disposing of said property; (3) for general relief; and (4) for process. The defendant denied the material allegations of the petition. The jury returned a verdict for the petitioner, and decree was entered accordingly. A motion for a new trial was overruled, and the exception is to that judgment.

The mother-in-law of the plaintiff testified: "She [Mrs. Harwell] asked me one Sunday morning to go out and look at her flowers; and she said, 'I want to talk to you.' She said, 'I am not going anywhere; I am going to stay with Foster and give him what I have got, to take care of me my lifetime;' and I said, 'I know he will do it,' and she said, 'Yes, yes.' This conversation was in their front yard, not so long after Mr. Harwell's death. This was the only time she talked to me about this. She said, 'I have given him everything I have, to take care of me.' No, she did not mention anything about a deed or will, or any writing of any sort." The wife of the plaintiff testified: "I heard part of a conversation, after Mr. Harwell died, between Foster Harwell and his stepmother. She said she would never go anywhere else, she would never be satisfied; and she would give him everything she had at her death to take care of her the balance of her life; and he said he would do all he could for her. After that time he did all a son could do for a mother. After the death of her husband she lived in the room with us, and died in there. Foster told her he would do everything she wanted him to do. . . 'Yes,' she said, 'Foss, I am going to give you all my goods to let me live here;' and he said he would do it. There was no other conversation which I heard between the parties. She did not say then that she would make a will or deed to Foster. She told him he could have what was hers when she died. That was never reduced to writing. Let me go over it again—she said she would never be satisfied anywhere else, and said she wanted to stay on there with Foss, and said if he would take care of her the balance of her life, at her death what she had would go to him." The only evidence introduced by the defendant to contradict the testimony of the plaintiff in regard to the contract was the following letter: "Union Point, March 21st, 1920. Dear Edward: I have been thinking

17

sometime I would write to you. Wanted to hear from you, how you all were getting on. Then, too, I have been worrying about my business. The check I got from Gus Kimbrough estate, it was just deposited in the Union Point Bank. Mr. Harwell carried it. The papers he brought back stated it is only deposited; not no interest on it. Is not doing me any good. I want to change it. I want you to advise me and tell me what to do with it. I asked Mrs. Jim Smith what disposition she had made of hers. She said Mr. Smith had lent it to Greene County and gets 7%. Said that Faust assisted him in it. I wish you would talk to him about mine. See what you think about mine. I will have to change mine and will have to get you to tend to it for me. You know I don't understand such. I got a letter from Mr. Tracker a few weeks ago saying he would give me 10 per cent. He was in so much business and had fallen behind, and was so anxious to borrow it, made me a little uneasy. Therefore I did not do anything. This man married Mr. Harwell's daughter. He is a big rich man or has been, has good deal of property; of course you know nothing about that. That leaves me in a puzzle to know what to do. The check was $500.00. When you talk to Faust ask him if he thinks we will get any more out of the estate. . . Edward, you know this is all new business for me. I am ashamed for you to know my ignorance. I mean when I want to take it out. Must I get a blank check from the bank of deposit, send it up to you to get you to fill it out correctly? for I don't know how it ought to be. Never too old to learn. *Then you* send it back to *me* [underscoring in original letter] of course in my name. I don't want anybody else to have anything to do with it. I hope you will understand. Let me hear from you soon, what you think. Since writing this I will send you blank check, fill it out please, send it back to me, so I will know. I will not act until I hear from you."

*W. H. Fisher* and *J. G. Faust,* for plaintiff in error.

*Miles W. Lewis* and *Noel P. Park,* contra.